UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CLARENCE WATSON HERNDON,

    Plaintiff,    Case No. 1:21-cv-966

v.            Honorable Phillip J. Green

UNKNOWN SICES, et al.,

    Defendants.
_____/

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 5.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.)

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or

wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the following ICF medical personnel: Medical Practitioner Unknown Sices and Medical Practitioner Unknown Sossomon.

In Plaintiff's complaint, he alleges that on February 8, 2021, he "submitted a medical kite to Health Care Services [at ICF] complaining of difficulty breathing, dizziness, and seizures." (Compl., ECF No. 1, PageID.3.) The following day, February 9, 2021, Registered Nurse (RN) Keith Sikkima[1] checked Plaintiff's vitals and submitted the results to a medical practitioner. (*Id.*) On February 10, 2021, Defendant Sices "examined [Plaintiff] in [the] Unit 3 dayroom in lieu of Health Care Services." (*Id.*) Defendant Sices checked Plaintiff's vitals, and following his examination, Defendant Sices "advised [Plaintiff] to walk around in his room to strengthen his heart, concluding [Plaintiff's] condition was the result of inactivity." (*Id.*) Plaintiff followed Defendant Sices's medical advice, and on February 12, 2021,

---

[1] In Plaintiff's complaint, he also identifies this individual as "RN Sikkema." (Compl., ECF No. 1, PageID.4.) The Court will refer to this individual as "RN Sikkima."

2

Plaintiff "fell in his room from extreme dizziness, injuring the side of his abdomen."[2] (*Id.*, PageID.3–4.)  Plaintiff states that he "incurred internal bleeding in his stomach from falling in his room." (*Id.*, PageID.4.)

Subsequently, on February 15, 2021, Plaintiff "submitted a medical kite to Health Care Services complaining of difficulty breathing, dizziness, and seizures." (*Id.*)  The next day, February 16, 2021, RN Sikkima "took [Plaintiff's] vitals outside his room in the hallway, and referred the results to a medical practitioner." (*Id.*)  On February 17, 2021, Defendant Sossomon examined Plaintiff "in [the] Unit 3 dayroom in lieu of Health Care Services." (*Id.*)  After Defendant Sossomon's examination, Defendant Sossomon "advised [Plaintiff] to drink water after each meal in the amount equal to the liquids served with each meal, concluding [Plaintiff's] condition was the result of being food deprived." (*Id.*)

On February 22, 2021, Plaintiff "had difficulty walking to the door in his room and, with the assistance of two prison guards, he was secured in restraints and taken to Health Care Services where [Defendant] Sossomon took [Plaintiff's] vitals, followed by an EKG, IV salient and IV blood thinner." (*Id.*)  Following Defendant Sossomon's examination, Plaintiff was transported to "Sparrow Hospital in Ionia by ambulance for an EKG and CAT scan, then transferred to McLaren Hospital in Lansing where it was confirmed that he had blood clots in both legs and lungs." (*Id.*)

---

[2] Plaintiff does not allege that he submitted a medical kite, or alerted medical staff in any other manner, about either his fall or resulting injury.

3

On May 28, 2021, Plaintiff "grieved [Defendants Sices and Sossomon] for failure/refusal to prescribe medication(s) or provide adequate medical treatment." (*Id.*) Plaintiff contends that both grievances were "rejected as untimely, despite mitigating circumstances." (*Id.*)

Plaintiff avers that, as a result of "Defendants' acts and omissions, he suffered imminent harm to his health and well-being," and he was "subjected to further and continuing harm to his general health and well-being." (*Id.*, PageID.4–5.) Plaintiff further avers that "at all times relevant, Defendants were cognizant of Plaintiff's rheumatoid arthritis and major depression disabilities." (*Id.*, PageID.6.)

Plaintiff alleges that Defendants engaged in a civil conspiracy under § 1983 to violate his Eighth Amendment rights, and that Defendants violated his rights under the Eighth Amendment, as well as under state law. (*Id.*, PageID.5–7.) Plaintiff seeks compensatory and punitive damages, as well as declaratory relief. (*Id.*, PageID.7.)

## II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

5

### A. Civil conspiracy under § 1983

Plaintiff contends that, pursuant to § 1983, Defendants "conspired in tortious activity with the MDOC[3] to deprive Plaintiff of his rights under the Eighth Amendment . . . by providing minimal medical care and treatment." (Compl., ECF No. 1, PageID.5.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550

---

[3] Plaintiff does not name the MDOC as a Defendant. To the extent that Plaintiff intended to name the MDOC as a Defendant, Plaintiff may not maintain a § 1983 action against it. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Instead, Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe several discrete occurrences involving ICF medical personnel. Plaintiff appears to rely entirely on a highly attenuated inference of a conspiracy from the mere fact that he received medical treatment, which Plaintiff contends was objectionable and inadequate, from ICF medical providers on several separate occasions over a short period of time. As the Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege an agreement among Defendants to injure him by providing allegedly inadequate medical care, and instead, alleges that on several discrete occasions,

7

Defendants separately provided medical treatment to him, Plaintiff fails to state a plausible claim of conspiracy.[4]

### B. Eighth Amendment

Plaintiff next claims that Defendants violated his rights under the Eighth Amendment by "failing to provide adequate medical care and treatment." (Compl., ECF No. 1, PageID.5.) The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective

---

[4] Moreover, a plaintiff "cannot succeed on a conspiracy claim [when] there was no underlying constitutional violation that injured [the plaintiff]." *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009) (citing *Bauss v. Plymouth Twp.*, 233 F. App'x 490, 500 (6th Cir. 2007)). As set forth herein, Plaintiff fails to state an Eighth Amendment claim against Defendants, and as such, Plaintiff cannot state a plausible conspiracy claim. *See infra* Part II.B.

component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

      The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than

9

mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if

10

the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

In this action, Plaintiff contends that Defendants Sices and Sossomon provided Plaintiff with inadequate medical care by "[p]rescribing medical advice in lieu of proper medical care and treatment." (Compl., ECF No. 1, PageID.6.) Plaintiff also contends that, as a result of "Defendants' acts and omissions, he suffered imminent harm to his health and well-being," and "at all times relevant, Defendants were cognizant of Plaintiff's rheumatoid arthritis and major depression disabilities." (*Id.*, PageID.4, 6.) Although Plaintiff makes a conclusory allegation that Defendants were aware of "Plaintiff's rheumatoid arthritis and major depression disabilities," Plaintiff's complaint contains no further allegations regarding these conditions and contains no explanation regarding any connection between these conditions and the medical care he received from Defendants. (*Id.*, PageID.6); *cf. Napier*, 238 F.3d at 742 (discussing that a plaintiff must show a "detrimental effect of the delay in medical treatment" with "medical evidence").

Furthermore, assuming, without deciding, that Plaintiff adequately alleged the objective component of the relevant two-prong test, with respect to the subjective component, it is apparent from Plaintiff's complaint that he received medical treatment from Defendants and that Defendants did not disregard a substantial risk of serious harm to Plaintiff. Specifically, after Plaintiff submitted medical kites on February 8, 2021, and February 15, 2021, alerting medical staff to his complaints of "difficulty breathing, dizziness, and seizures," he was first evaluated by RN Sikkima, and then the following day, he was evaluated by either Defendant Sices or Defendant Sossomon. (Compl., ECF No. 1, PageID.3–4.) When Defendant Sices examined

Plaintiff on February 10, 2021, he "advised [Plaintiff] to walk around in his room to strengthen his heart, concluding [Plaintiff's] condition was the result of inactivity."[5] (*Id.*, PageID.3.) Then, when Defendant Sossomon examined Plaintiff on February 17, 2021, he "advised [Plaintiff] to drink water after each meal in the amount equal to the liquids served with each meal, concluding [Plaintiff's] condition was the result of being food deprived." (*Id.*, PageID.4.) Subsequently, on February 22, 2021, after Plaintiff was brought to Health Care Services due to his "difficulty walking to the door in his room," Defendant Sossomon "took [Plaintiff's] vitals, followed by an EKG, IV salient and IV blood thinner." (*Id.*) Following Defendant Sossomon's examination, Plaintiff was then transported to two hospitals that same day for further treatment "where it was confirmed that he had blood clots in both legs and lungs." (*Id.*) Plaintiff provides no further information regarding any subsequent treatment he received for the blood clots.

Although it is clear from Plaintiff's complaint that he disagreed with Defendants' treatment decisions during the time period relevant to this action, "a patient's disagreement with his physicians over the proper course of treatment

---

[5] Plaintiff alleges that, on February 12, 2021, while following Defendant Sices's medical advice, he "fell in his room from extreme dizziness, injuring the side of his abdomen," and he "incurred internal bleeding in his stomach from falling in his room." (Compl., ECF No. 1, PageID.3–4.) However, Plaintiff does not allege that he advised Defendants or any other medical staff at ICF about either the fall or his resulting injury. Because Plaintiff does not allege that Defendants were aware of this fall or the resulting injury, he fails to show that Defendants were deliberately indifferent to his medical needs as related to the fall. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994*)* ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

13

alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)). Moreover, to the extent that Plaintiff intended to claim that Defendants should have diagnosed his blood clots at an earlier date, "the right to adequate medical care does not encompass the right to be diagnosed correctly[.]" *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944–45 (6th Cir. 2010) (finding that the doctor's initial incorrect diagnosis of severe constipation, even "in light of [the prisoner's] substantial weight loss and sharp stomach pain[,]" amounted only to negligence given the prisoner also complained of his "inability to have a bowel movement for several days and other stomach pains, which could have been consistent with [the doctor's] diagnosis").

Contrary to Plaintiff's conclusory assertion that Defendants were "deliberate[ly] indifferen[t] to [his] serious medical needs," Plaintiff's allegations in the complaint show that Defendants were responsive to Plaintiff's medical needs, and that they provided prompt treatment for Plaintiff's medical complaints. (Compl., ECF No. 1, PageID.6); *see supra* Part I. Accordingly, because Plaintiff has failed to allege facts showing that the named Defendants were deliberately indifferent or that his treatment was "so woefully inadequate as to amount to no treatment at all," *Mitchell*, 553 F. App'x at 605 (citation omitted), his Eighth Amendment claim is properly dismissed.

14

### C. State-law claims

Plaintiff also alleges that Defendants "were grossly negligent to Plaintiff by denying adequate medical care and treatment" and that Defendants "engaged in extreme and outrageous conduct by denying adequate medical care and treatment, . . . resulting in intentional infliction of emotional distress." (Compl., ECF No. 1, PageID.6–7.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of

15

litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, Plaintiff's state-law claims against Defendants will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445

(1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

    This is a dismissal as described by 28 U.S.C. § 1915(g).

    A judgment consistent with this opinion will be entered.


Dated:   February 2, 2022              /s/ Phillip J. Green
                                                    PHILLIP J. GREEN
                                                    United States Magistrate Judge